# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**DONNIE CHUNN**                                                                              **PLAINTIFF**

**v.**                                                       **CIVIL NO. 3:20-cv-00667-KHJ-BWR**

**COMMISSIONER OF SOCIAL**                                                   **DEFENDANT**
**SECURITY ADMINISTRATION**

## REPORT AND RECOMMENDATION

Plaintiff Donnie Chunn seeks judicial review of the final decision of the Commissioner of Social Security Administration denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3). Plaintiff filed a Motion for Summary Judgment [13] and Memorandum in Support [14]. The Commissioner filed a Response [19] and Plaintiff a Rebuttal [20]. Having reviewed these submissions, the administrative record, and relevant law, it is recommended that the decision of the Commissioner be affirmed because, contrary to Plaintiff's argument, the ALJ used proper legal standards to evaluate the evidence, and the residual functional capacity determination is supported by substantial evidence.

## I. BACKGROUND

Plaintiff filed an application for SSI in November 2018, alleging disability beginning August 27, 2018, when he was 39 years of age due to blindness in his left eye, migraines, blackouts, torn ligaments in his right knee, a pellet in his head that prevents him from having an MRI, depression, bad nerves, insomnia, congenital spine disease, diabetes, thyroid disease, chronic migraines, neuropathy, depression,

arthritis, and carpal tunnel syndrome. [12] at 14, 184, 310. Plaintiff has a high school education, HVAC vocational training, and can communicate in English. *Id.* at 20. He worked in the past as a stocker. *Id.* at 27.

Plaintiff's application for benefits was denied initially and upon reconsideration, and he requested a hearing before an ALJ. *Id.* at 14. An in-person hearing was held on December 5, 2019, where Plaintiff and a vocational expert testified. *Id.* at 64-139. Upon Plaintiff's counsel's request, the ALJ held a supplemental telephonic hearing to allow counsel an opportunity to question consultative examining physician Richard M. Chamberlain, M.D., whose opinion supported the extent of physical limitation alleged by Plaintiff. Dr. Chamberlain and a vocational expert testified during the April 6, 2020 supplemental telephonic hearing. *Id.* at 106-39.

On April 22, 2020, the ALJ issued a decision unfavorable to Plaintiff, finding that he suffered from the following severe impairments: left eye vision loss and depression. *Id.* at 16. The ALJ concluded "that the claimant's right knee and right shoulder" were not severe impairments. *Id.* He found that Plaintiff had "not provided enough evidence substantiating appreciable work-related limitations resulting from" alleged torn ligaments in his right knee and a right shoulder rotator cuff problem. *Id.* at 17. The ALJ concluded that

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 416.967(a), with the following exceptions: He can use his right eye vision for all job related duties to include depth perception and near/far vision. He can have occasional interaction with supervisors, co-workers, and the public. He can perform simple, routine work in low-stress jobs, defined as involving only occasional decision-making.

*Id.* at 19.

Based upon vocational expert testimony, the ALJ found that Plaintiff could not perform his past work as a stocker, a heavy and semi-skilled occupation, but could perform other jobs existing in significant numbers in the national economy, such as the sedentary, unskilled representative occupations of cuff folder, topper, and table worker. *Id.* at 27-28. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner and subject to judicial review under 42 U.S.C. § 405(g).

On judicial review, Plaintiff alleges that the ALJ "played doctor" by finding only the opinion of non-examining Disability Determination Services consultant David Powers, Ph.D. persuasive, finding all treating or examining medical opinions unpersuasive, and relying heavily upon medical records originating prior to the alleged onset of disability date, August 27, 2018. [14] at 7. The Commissioner counterargues that the ALJ, and not a doctor, determines whether a claimant meets the statutory definition of disability, and the ALJ considered many factors including Plaintiff's medical records, testimony, and daily activities. [19] at 5.

## II. DISCUSSION

### A. Standard of Review

The Court reviews the Commissioner's denial of Social Security benefits only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Salmond v. Berryhill*, 892 F.3d 812, 816-17 (5th Cir.

2018). The Court does not "reweigh the evidence in the record, try the issues *de novo,* or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Salmond,* 892 F.3d at 817. "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision. Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (citations and punctuation omitted).

"To determine whether a claimant is disabled, the Commissioner's analysis proceeds along five steps." *Webster v. Kijakazi,* 19 F.4th 715, 718 (2021); *see* 20 C.F.R. § 404.1520(a)(4). The Commissioner considers (1) whether the claimant is engaged in "substantial gainful activity," (2) the severity and duration of the claimant's impairments, (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations, (4) whether the claimant can still do "past relevant work," and (5) whether the impairment prevents the claimant from doing any relevant work. *Id.* "The claimant bears the burden on the first four steps." *Id.* "If the claimant advances that far, the burden shifts to the Commissioner to 'prove the claimant's employability.'" *Id.*

A claimant's residual functional capacity is used at the fourth step to determine if he or she can still do past relevant work and at the fifth step to determine whether he or she can adjust to any other type of work. 20 C.F.R. § 416.920(e). "The residual functional capacity determination is not a medical opinion, but an administrative finding of fact." Social Security Ruling 96–8p, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2,

1996) n. 4). It is an assessment, based on all the relevant evidence in the record, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his or her impairments. 20 C.F.R. § 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The sole responsibility for assessing a claimant's residual functional capacity rests with the ALJ, who is not required to incorporate limitations into the residual functional capacity determination that he or she did not find to be supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

B. <u>The ALJ used the proper legal standards, and his residual functional capacity determination is supported by substantial evidence</u>

Plaintiff's arguments regarding the ALJ's findings about Plaintiff's physical and mental impairments amount to a disagreement with how the ALJ weighed the record evidence, which is not a proper ground for overruling the Commissioner's decision.

1. <u>Physical impairment</u>

The ALJ concluded that Plaintiff could perform limited sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles such as docket files and small tools. 20 C.F.R. § 416.967(a). With respect to his claimed shoulder and knee limitations, Plaintiff argues that the ALJ created a gap of medical evidence by dismissing the opinions of non-examining consultative physician, William H. Hand, M.D., and examining consultative physician, William Chamberlain, M.D., and then filling the "gap with his own opinions on the severity of those problems which then amounts to the substitution of his lay-opinion for that of medical sources." [20] at 1-2.

Dr. Chamberlain's opinion was the only evidence to support the degree of physical limitation alleged by Plaintiff. [12] at 17. Dr. Chamberlain, who is board certified in internal medicine, diagnosed a torn ligament in Plaintiff's right knee and rotator cuff tendinopathy and found that due to shoulder and right knee pain, Plaintiff had severe limitations with standing and walking, severe limitations with lifting and carrying, and would not be able to reach, grasp, handle, or finger. *Id.* at 547. In contrast, Dr. Hand, an orthopedist who did not examine Plaintiff, concluded that Plaintiff had right shoulder pain due to capsulitis and was limited in reaching to the right overhead but could nevertheless perform medium work. *Id.* at 176-78.

The ALJ was not required to mirror the opinion of either doctor because a claimant's residual functional capacity is based on all the relevant evidence in the record. *See* 20 C.F.R. § 416.945(a). The ALJ determined that Dr. Hand's conclusion that Plaintiff could perform medium work was unpersuasive "primarily because it fail[ed] to take into account the claimant's left eye blindness, which is well-documented by objective evidence." *Id.* at 25. The ALJ found that Dr. Chamberlain's findings were isolated and inconsistent with the record as a whole because of the following evidence: Records from Central Mississippi Residential Center, Newton Crisis Stabilization Unit, indicated that Plaintiff reported no musculoskeletal problems and had normal range of motion in all joints in January 2017 and July 2018. *Id.* at 22-23, 390, 423. *Id.* A right knee x-ray performed in February 2019 was normal with no evidence of osseous, articular, or soft tissue abnormality. *Id.* at 22-23, 484. X-rays of the right shoulder performed in April 2019 were normal, with no evidence of

any osseous, articular, or soft tissue abnormality. *Id.* at 22-23. Azhar M. Pasha, M.D., performed a disability exam on October 6, 2015 and found that despite Plaintiff's complaints of right shoulder pain, he had full right shoulder range of motion and full range of motion in his spine, all extremities, and joints. *Id.* at 22-23, 387. According to Dr. Pasha's report, Plaintiff was "able to squat, able to do heel to toe walk," did not have an antalgic gait, had "[n]ormal grip and dexterity in both hands," and "5/5 motor strength in all extremities." *Id.* at 22, 387.

A claimant is not eligible for SSI until the date on which he or she files an application for benefits. 20 C.F.R. §§ 416.202, 416.501. The earliest month for which SSI benefits can be paid is the month following the month the claimant filed an application. *See* 20 C.F.R. §§ 416.202, 416.305, 416.330, 416.335. The adjudicatory period here was from November 21, 2018 through April 22, 2020. Plaintiff alleges the ALJ erred by heavily relying on medical evidence originating prior to 2018 instead of the February 9, 2019 opinion of Dr. Chamberlain. Plaintiff's argument is ineffective, first, because he has not cited authority indicating that the date of an SSI application dictates the period during which evidence must have been created to be relevant to disability. Second, the argument is ineffective because it highlights the absence of evidence within the period from November 2018 through April 2020. Despite Plaintiff's allegations of debilitating pain in his shoulder and knee, the ALJ observed that "the record contains ***no evidence*** of any medical treatment related to these impairments. The claimant admitted to never having surgery, and his list of

medications shows he is only taking over-the-counter Excedrin for pain[.]" *Id.* at 17. (emphasis in original).

The ALJ not only relied on the discussed medical evidence from 2015, 2017, 2018, and 2019, he also questioned Dr. Chamberlain about his opinion at the supplemental telephone hearing. The ALJ confirmed that Dr. Chamberlain could not provide an opinion on whether Plaintiff's physical limitations were permanent or temporary because he examined Plaintiff on one occasion. *Id.* at 21. The ALJ learned that while Dr. Chamberlain recommended an assistive device for standing and walking, he did not find one medically necessary. *Id.* When the ALJ told Dr. Chamberlain that Plaintiff did not use an assistive device at the first hearing, Dr. Chamberlain responded that Plaintiff did not use an assistive device during the exam either. *Id.* at 21, 127. The ALJ's decision to find Dr. Powers's conclusion persuasive, while finding Dr. Chamberlain's unpersuasive, is also supported by the ALJ's observation that "[a]lthough the claimant testified he has had right shoulder rotator cuff problems on and off for 7 or 8 years, this encompasses the time when he was still working, thus implying he was able to successfully work despite his rotator cuff problems." *Id.* at 22.

The ALJ's determination that Plaintiff did not provide enough evidence substantiating appreciable work-related limitations resulting from his shoulder or knee is a finding that is supported by substantial evidence.

8

2. <u>Mental impairment</u>

The ALJ assessed the medical opinions regarding the degree of Plaintiff's mental impairment, concluding that Plaintiff had "a well-documented history of recurrent major depressive disorder (MDD) with related mental health treatment, including drug-related inpatient psychiatric hospitalizations and outpatient medication management and counseling from Weems Mental Health." [12] at 18. The ALJ's mental residual functional capacity determination provided that Plaintiff was limited to occupations with "occasional interaction with supervisors, co-workers, and the public. He can perform simple, routine work in low-stress jobs, defined as involving only occasional decision-making." [12] at 19.

The ALJ found persuasive the opinion of Dr. Powers, a non-examining Disability Determination Services consultant who concluded that "the claimant is having a good response to medication. A worst case mental review would show moderate concentration, social, and adaptation difficulties," but these would not prevent routine work." *Id.* at 191. Plaintiff argues that this opinion should not have been found persuasive because Dr. Powers did not examine Plaintiff, and the "best possible source for an opinion as to the impact of [his] psychological symptoms on his ability to perform . . . even simple work" was Noel Palmer, FPMHNP, counter-signed by Mary R. Larkin, M.D., who treated Plaintiff regularly at Weems Health Center. [14] at 10-13. Nurse Practitioner Palmer opined that Plaintiff was "seriously limited" in his ability to carry out very short and simple instructions, unable mentally to meet

9

competitive standards, and treatment would require him to be absent from work more than 4 days per month. *Id.* at 26, 506-09.

The ALJ was not required to give special weight to Nurse Practitioner Palmer's opinion. The Social Security Administration eliminated the treating source rule for claims filed on or after March 27, 2017, such as Plaintiff's. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57 (Jan. 18, 2017). The Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources." 20 C.F.R. § 404.1520c(a); *see Webster*, 19 F.4th at 719 (explaining that "ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our prior caselaw in the past."). The rules are now aligned to focus more on the content of the medical evidence, and there is not an automatic hierarchy for treating sources, examining sources, and then non-examining sources which must be mechanically applied. 81 Fed. Reg. 62560-01, 2016 WL 4702272 (Sept. 9, 2016); 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57 (Mar. 27, 2017).

The rules continue to allow an ALJ to consider an individual's treating source's medical opinion "to be the most persuasive medical opinion if it is both supported by relevant objective medical evidence and the source's explanation, and is consistent with other evidence, as described in final 404.1520c and 416.920c." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57. "[A]djudicators can currently find a treating source's medical opinion is not well-supported or is inconsistent with the other

10

evidence and give it little weight, while also finding a medical opinion from an examining source, such as a consultative examiner, or nonexamining source, such as a medical or psychological consultant, is supported and entitled to great weight." *Id.* at 5853. That is, there is no "automatic hierarchy" for treating sources, examining sources, then non-examining sources. *Id.*

The ALJ found Nurse Practitioner Palmer's opinion unsupported and inconsistent with the record, explaining as follows:

> Medical providers have prescribed appropriate medications, including psychotropic medications (B19E). Mental health treatment records document complaints of depression, largely related to his brother's death in 2015. He did have some suicidal thoughts and an attempted suicide/overdose. He had disturbed sleep, some social isolation, and an auditory hallucination(s) (hearing voices, including his brother's voice). He had some crying spells, mood swings, paranoia, and anxiety (B3F-B5F, B10F, B12F, and B14F). Of note, these complaints appear to be exacerbated by the claimant's admitted history of drug abuse, which has led to repeated inpatient psychiatric admissions (B3F-B4F). Weems Mental Health Center treatment records document some abnormal findings on mental status examinations, such as depressed mood and flattened/blunted affect (B5F, B10F, B12F, and B14F).
>
> However, evidence shows the claimant's symptoms improved with medication and treatment. (See B5F, B10F, B12F, B14F, and Hearing Transcript). Overall, Weems Mental Health Center treatment records document generally unremarkable mental status exams, with appropriate appearance and attitude; normal, logical thought processes; grossly intact concentration; normal memory; average intelligence, and no suicidal thoughts (B5F, B10F, B12F, and B14F).

[12] at 18.

Plaintiff argues that Dr. Powers's opinion should not have been found persuasive because the opinion "was generated prior to and could not have been informed by evidence of Plaintiff's second treatment at the Crisis Stabilization Unit

11

on May 7, 2019, with auditory hallucinations and commands, intermittent thoughts of suicide and complicating substance abuse problems." [20] at 3. Dr. Powers, however, was aware that Plaintiff had been admitted on more than one occasion to inpatient treatment with a diagnosis of MDD and amphetamine use disorder. [12] at 190-91. Dr. Powers reviewed Weems Mental Health Center records which indicated Plaintiff was having a good response to medication. *Id.*

The argument that another instance of Plaintiff being admitted for inpatient treatment could be expected to have impacted Dr. Powers's opinion is speculative and overlooks the ALJ's observation that Plaintiff's inpatient psychiatric hospitalizations were drug-related, and his depression and anxiety "appear to be exacerbated by the claimant's admitted history of drug abuse, which has led to repeated psychiatric admissions." *Id.* at 18. Plaintiff's suggestion that the Court determine that the ALJ "fail[ed] to appreciate the common waxing and waning of psychological issues with changes to medication demonstrated by the record in this case" is merely an invitation for the Court to reweigh the evidence in his favor. The ALJ's detailed decision shows that he carefully considered "all the relevant evidence" in the record. *See* 20 C.F.R. § 416.946.

Plaintiff's argument also overlooks the ALJ's finding that Plaintiff "engaged in a somewhat normal level of daily activity and interaction." *Id.* at 24. The ALJ noted that Plaintiff worked successfully in the past, was independent with personal care, could perform household chores and prepare simple meals, had a driver's license, shopped and lived with others, attended his son's football games, and stayed with his

family at the Neshoba County fairgrounds. [12] at 24. The ALJ's conclusion that Dr. Powers's opinion was more consistent with these activities than Nurse Practitioner Palmer's is a finding that is supported by substantial evidence.

### III. RECOMMENDATION

Plaintiff's Motion for Summary Judgment [13] should be denied and the ALJ's April 22, 2020 decision affirmed.

### IV. NOTICE OF RIGHT TO OBJECT

Within fourteen days after being served with a copy, any party may serve and file with the Clerk of Court written objections to this Report and Recommendation. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection. L.U.Civ.R. 72(a)(3).

A district judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. A district judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations shall be barred, except upon

grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 16th day of August, 2022.

*s/ Bradley W. Rath*
HONORABLE BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE